Central Bank can be charged with the costs of obtaining the same. The demand, so far as interest and costs are concerned, is therefore disallowed, and the order of this court will be, that upon the petition and proofs, the amount of the check in the petition mentioned, to-wit, the sum of $3,125, may be paid to the petitioner, on his order of record herein, out of the moneys in court as assets of the Central Bank of Brooklyn.

## Case No. 6,231.

### In re HAVENS.

[1 N. B. R. 485 (Quarto, 126).] [3]

District Court, D. New Jersey. 1868.

BANKRUPTCY—ASSIGNEE—RESIDENCE OF.

Where it is shown that an assignee, chosen by the creditors, resides out of the district in which proceedings are being carried on. the court will not confirm the choice.

The creditors of [James W. Havens], the said bankrupt, having on the 7th of April last chosen James Newton, of Middletown, New York, as assignee, Mr. Register Johnson refused to confirm the choice, on the ground that the assignee resided out of the district and was beyond the reach of process of the court, and referred the matter to the court.

FIELD, District Judge. For the reasons stated by the register, the choice of assignee is not approved. The assignee must reside in the district in which proceedings are being carried on.

HAVENS (HUDDY v.). See Case No. 6,826.

## Case No. 6,232.

### The HAVRE.

### The SCOTLAND.

[1 Ben. 295.] [1]

District Court, S. D. New York. July, 1867.[2]

COLLISION AT SEA OFF SANDY HOOK—OWNERSHIP—PLEADING—BOTH VESSELS IN FAULT—LOOKOUT—VESSEL UNDER SHORT SAIL—RIGHT OF MASTER TO BE PRESENT AT THE EXAMINATION OF HIS CREW AS WITNESSES.

1. Two sailing vessels, a bark and a ship, came in collision in the night, ten or fifteen miles southeast of Sandy Hook. Both were close hauled, the bark being on her port tack; and though the lights could have been seen at a distance of more than a mile, the lights of the ship were not seen till the green light was seen within a quarter of a mile off. The bark was under short sail, so that she could not tack, but only wear ship, and she did not change her course after discovering the light, till the collision. The ship saw the bark's green light ten

[3] [Reprinted by permission.]

[1] [Reported by Robert D. Benedict. Esq., and here reprinted by permission.]

[2] [Reversed as to The Havre, in Case No. 6,-233.]

or twelve minutes before the collision. She was on her starboard tack, and did not change her course till the collision. Her lookout, after reporting the light, went aft. The pilot who was in charge of her testified that he saw the bark's green light and then her red light, and he then went to the weather side to see if there were any vessels on that side, and when he came back, the green light was again in view, and it was too late to avoid a collision. The other hands on the ship testified that they saw the lights and their changes, but with slight variations. The ship made no change of her course, and struck the bark fourteen or fifteen feet from her stern, in such a way that a slight starboard movement of the ship's wheel would have avoided the collision. On the trial, objection was made on the part of the ship, that the libellant, who had libelled as owner of the bark, had failed to prove his title. The court having suggested that the pleadings in behalf of the ship did not set forth with particularity the way in which the fault of the bark caused the collision. it was insisted, on behalf of the ship, that the allegation was explicit enough, and that if it were not, no advantage could be taken of it, because no exceptions were filed. Depositions of the crew of the ship were read, from which it appeared that when they were being taken, the proctor for the bark objected to the presence of the master of the ship, on the ground that his presence might exercise an undue influence over the witnesses. and the commissioner excluded him. To this exception was taken. *Held,* that proof of the title to the bark by her alleged owner might be given after the trial.

[Quoted in The Mary C., Case No. 9,201.]

2. The libel and answer should set out clearly and explicitly, though briefly, the facts relied on, and that in collision cases this is especially important.

3. The court has the power, in any stage of the case, to require the parties to supply any defect in the pleadings, though counsel can appeal to the court for that purpose. only by exceptions filed at the proper time.

4. The commissioner was in error in excluding the captain of the ship from being present at the taking of the depositions of his crew. It was not only his privilege but his duty to be there, especially as he was a stranger contesting his rights before a foreign tribunal. He should not have been excluded unless his contumacy compelled that course.

5. The bark was in fault for not seeing the light of the ship sooner. Being on ground where vessels are numerous and there is great danger of collision. being under short sail and not able to answer her helm promptly, and being on the port tack, it was her duty to exercise unremitting vigilance in looking out for approaching lights. If she had done so, she would have seen the light sooner, and could have kept out of the way.

[Cited in The Sunnyside, Cases Nos. 13,620, 13,622.]

6. It was the duty of the bark. having the wind on her port side, to keep out of the way of the ship, which was crossing her track so as to involve risk of collision. She gave no sufficient excuse for not doing this.

7. The lookout of the ship was remiss in leaving his post after reporting the light, and the pilot in charge was also remiss in going to look out for other vessels.

8. Every vessel is bound to avoid a collision if she can, and the fault of one approaching vessel does not authorize another to run her down.

9. After the change in the bark's lights had occurred. which was alleged to have been seen from the ship, and the green light of the bark